**United States District Court**
**Southern District of New York**
------------------------------------------------------------x
SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION SECOND JUDICIAL DEPARTMENT

2009-00948
In the Matter of Ruth M. Pollack,
Admitted as Ruth Marie Pollack, an
Attorney and counselor at law,

                                             **Notice of Removal**
                                             **Civil Action No.** *09 CV 10116 (PAC)*
                                                  *JUDGE CROTTY*

Grievance Committee for the
Tenth Judicial District,
                          Petitioner,

Ruth M. Pollack,
                          Respondent.

(Attorney Registration No. 1892660)

------------------------------------------------------------x
**Please Take Notice** that on December 10, 2009 a petition for removal was filed with

the Clerk of the United States District Court for the Southern District of New York ,

and that as a consequence, the proceeding:

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION SECOND JUDICIAL DEPARTMENT

2009-00948
In the Matter of Ruth M. Pollack,
Admitted as Ruth Marie Pollack, an
Attorney and counselor at law,

                                             **Petition for Removal**
                                             **Civil Action No.**

Grievance Committee for the
Tenth Judicial District,
                          Petitioner,

Ruth M. Pollack,

                                Respondent.

(Attorney Registration No. 1892660)

------------------------------------------------------------x

has been removed to that Court.

Dated:  Riverhead, New York
            December 10, 2009

Ruth M. Pollack, Esq. Sui Juris
21 West Second St. Ste. 13
Post Office Box 120
Riverhead, NY 11901
631-591-3160

**United States District Court**
**Southern District of New York**

----------------------------------------------------------x

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION SECOND JUDICIAL DEPARTMENT



2009-00948
In the Matter of Ruth M. Pollack,
Admitted as Ruth Marie Pollack, an
Attorney and counselor at law,

Grievance Committee for the
Tenth Judicial District,

               Petitioner,

Ruth M. Pollack,

               Respondent.

(Attorney Registration No. 1892660)

**Petition for Removal**
Civil Action No. 09 CV 10116

'09 CIV 10116

JUDGE CROTTY

----------------------------------------------------------x

Ruth M. Pollack, Esq. Petitioner **Sui Juris, hereby petitions for the removal of the above proceeding.**

REMOVAL is respectfully sought from the Supreme Court, Appellate Division of the State of New York, on the following grounds:

    1. A petition was filed and commenced in the Supreme Court, Appellate Division, Second Department, dated June 30, 2009 purporting to obtain relief in a proceeding which will deprive petitioner of due process of law, equal protection of law and by fraud, in consequence of a pattern of racketeering in violation of 18 USC 1961 et seq. and thus this proceeding has become re- removable pursuant to 28 USC 1446 and related removal statutes.  Copy of Pollack's original removal papers ["Removal I"] are annexed as "A".

1

2. Removal is also sought under 18 USC 1961 et seq. and 42 USC 1973, and 1981 to 1985 on the ground that this Court has jurisdiction of the claim or cause of action alleged in such adversary proceeding or action under 28 USC 1332 and 1343.

3. Thirty days have not elapsed since service or otherwise of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable. Fritzlen v. Boatmen's Bank, 212 U.S. 364 (1909):

> "If after an order to remand has been made, it results, from the subsequent pleadings of conduct of the parties, that the cause is removable, a second application to remove can be made, and the right to make it is not controlled by the previous remanding order, nor is the granting of the order to remove under such circumstances a refusal to give effect to such previous order to remand."

In addition, despite the now fraudulent and altered docket entries, Pollack made and served a timely motion for reconsideration of the November 13, 2009 "Memorandum Order" and Judicial Notice of newly discovered evidence and demand for Oral Argument. That application is pending before the Court. That application with affidavit of service is on the current docket. Petitioners have requested additional time to respond to that application, which is returnable on December 11, 2009.

**Newly Discovered Evidence:**

4. Such most recent event occurred on November 13, 2009 when a "Memorandum Order" was postmarked as mailed by ordinary mail to Pollack by the United States District Court, Southern District of New York and received by respondent Pollack on Saturday, November 21, 2009. Extremely serious is the fact that this receipt was followed by Pollack's independent obtaining a copy of two different versions of the

2

electronic docket on this case, **each of which** was allegedly "certified" by the Court as a true and correct copy of the official docket. Copies of the two (2) "official" federal dockets in this case's initial removal with FEDEX confirmations are annexed as "A". No evidence exists that any docket was "certified" or who "certified" any of them.

## FRAUD UPON THE FEDERAL COURT AND RESPONDENT POLLACK COMMITTED BY PETITIONER AS WELL AS "JANE AND JOHN DOES 1-10" of S. D. N. Y. :

5. In this re-removal, we have copious newly discovered evidence of federal civil and criminal vilaitons of the law by petitioner Grievance Committee, as well as parties unknown to respondent, referred to herein as "Jane Does and John Does 1 through 10":

a) By letter dated December 2, 2009, petitioner Robert Cabble writes a faxed letter with attachments (32 pages) to the Court in which he admits and confesses to the commission of numerous violations of ethical rules, both state and federal, as well as federal crimes and civil acts of discrimination against Pollack. Ms. Pollack never received any of the emails or ECF's referred to "by other means". Exhibit "B" annexed.

b) Cabble calls these crimes "simple errors", "mistakes" or corrections of "clerks" "failures" and "mistakes", while failing to comprehend that he has now admitted to having tampered with a federal public docket and aided and abetted and/or coerced other individuals in the federal court to do the same.

c) He admits to having aided and abetted the filing of a false instrument with the federal Court in this case, a Class E felony. He admits to having personally contacted the New York State Supreme Court of New York County to which a certified copy of the SDNY docket was mailed on 11/17/09 and delivered, received, signed on 11/18/09.

d) Mr. Cabble implicates the "Chief Counsel" of the Committee, Rita D. Adler, Esq., who he admits has called the Chief Clerk of the SDNY to discuss, ex parte, my case. He admits that the first certified docket of 11/17/2009 was sent from the SDNY Court after his ex parte phone calls to three "unidentified" clerks and then Ms. Diane Lewis and then Mr. Clifford Kirsch, District Executive. Ms. Lewis's mailing to the Appellate Division, Second Department from SDNY of a "package of certified documents" would appear to be a federal crime. No indication of any docketing error or alteration exists on the docket despite the undeniable proof that the docket was altered repeatedly and materials sent to the Court never appeared on the docket.

e) As a result of Chief Counsel Rita Adler's ex parte phone call to Mr. Kirsch, Ms. Adler is now another accessory and accomplice to this series of federal crimes. Now we have not only tampering with a federal docket, but also we have witness tampering, another federal crime making this case removable to federal court by law.

f) Petitioner failed to make any applications to this Court on notice to Pollack that it was seeking to change docket entries or alter the mailing in the case.

g) The New York County Supreme Court must now have in its official records the first set of "certified documents" from SDNY. The FEDEX records annexed confirm the receipt of the certified records never sent to respondent.

h) Cabble also admits to receiving "emails" from SDNY, while I have never received any emails or correspondence at the same time or after simultaneous with his receipt of e-mail. A serious question exists as to how petitioner has admittedly received emails and bounces from SDNY, while it is pro se –self-represented. As a sui juris litigant, Pollack has not received any bounces or emails as contained in Cable's letter to this Court. The Committee cannot demy that it has always been "pro se". Thus, the unilateral emails and bounces to the Committee have violated Pollack's equal protection and due process rights on a federal level.

i) Cabble omits to mention any of the names of the numerous clerks he spoke to about the soon to be altered federal docket. He omits to name Mr. Agostino [phonetic] or Mr. Wilson, who

4

admitted to Pollack that they were involved in the altering of the docket after Mr. Cabble called them.

j)   The Tenth Judicial District Grievance Committee and Appellate Division Clerks are equally implicated as it is presumed to be aware of the acts associated with this case. Indeed, Ms. Adler, Ms. Filosa, Mr, James Gowan and the balance of the Committee as well as "Chairman and Vice Chairman" respectively, attorneys and Paul Gianelli and Kenneth Weinstein, are united in interest in this scheme to retaliate against me and my clients for opposing discrimination, SDNY and EDNY docket tampering and case destruction.

6.   What was already a federal deprivation of rights case has now exploded into veritable panoply of federal criminal violations by a renegade "committee" acting well outside of its limited jurisdiction, powers and authority.  This fact has been confirmed by a written order of Justice Eng of the Appellate Division Second Department, who rejected a Writ of Prohibition and Mandamus submitted for review and action by Pollack. [See Removal I annexed as "A".]

It has been established that the Second Department does not have jurisdiction over this case and that the case is exclusively federal.

7.   As a result, the "Decision and Order on Motion" signed by James Peltzer on June 23, 2009 is null and void and non-binding on this Court and Attorney Pollack.

**The Fraud and Criminal Acts Committed In this Honorable Court Has Rendered the Purported "Orders" from This Court Null and Void:**

8.   Pollack's 11/14/2009 letter on notice with Audit Report of Valley Stream U.F.S.D. No. 24 overnighted to this Court, the Grievance Committee and the

5

Second Circuit Court of Appeals and delivered on the morning of November 16, 2009 to the SDNY, was never entered on the docket as evidence as required by law. The case was not "terminated" on the docket until the next day, November 17, 2009. Thereafter the docket was again tampered and the November 16, and 17 entries were omitted entirely.

9.    It has not gone unnoticed by respondent Pollack that Rita Adler was a former Assistant District Attorney in County of Suffolk and in the Racket's Bureau there.   Ms. Adler has honed her craft by engaging in racketeering herself as admitted in writing by one of her co-conspirators, Mr. Cabble.

10.   Further, it has not gone unnoticed that Mr. Cabble worked in The Suffolk County Attorney's Office with Magistrate E. Thomas Boyle, a fact never disclosed to this Court of respondent Pollack by Mr. Cabble.   Messrs. Boyle and Cabble's relationship as colleagues and co-counsel in the Suffolk County Civil Division is important here because it is directly related to the case of Chesney v. Valley Stream U.F.S.D., No. 24 et al. in the Second Circuit with a pending death knell motion pending and delayed for an inordinate number of months due to the wholesale tampering with the ECF docket by court officials in EDNY and the ultimate total destruction of five years of litigation contained in the Court's file. Respondent Pollack has been the sole attorney for plaintiff on that case. Her client and she became the targets for retaliation by petitioners because Pollack and her client former Cleaner, Mr. Chesney uncovered the attempted cover-up of this destruction. This is also proof that the 10th Grievance Committee failed to disclose this conflict of interest of Mr.

Cabble in violation of the Ethics Rules.    In further violation of the Ethical Rules, Petitioner has violated Respondent Pollack's federal rights in targeting her in its refusal to investigate or even entertain Mr. Chesney's formal complaint against the two law firms involved in the EDNY cover-up, Lamb Barnosky LLP and Stern Sokoloff, LLP. This constitutes further federal law violations in yet another federal Court and discrimination against Pollack, a disabled attorney representing a disabled client.

11. Another federal due process issue here is the admission that the "Special Referee" James A. Gowen, Esq., unilaterally selected and paid for by respondent and/or the State of New York and./or "Jane and John Does", called Ms. Pollack two days before Thanksgiving on November 24, 2009 and told her she was to appear before him at the Grievance Committee during the week of December 1, 2009 and that he was "not bound by any federal judge" when questioned by Ms. Pollack, who relied on the official docket that placed the case in New York County Supreme Court.  Clearly Mr. Gowan was part to ex parte communication with petitioner.  Clearly this is not an independent unbiased referee, and not a judge.

12.  The oral argument scheduled for this Court's Removal and Remand motions was scheduled for November 13, 2009 and cancelled orally as well by phone the week of November 13.  No reason was given. for this verbal scheduling by phone especially after Mr. Tam advised Pollack not to call Chambers but to go through the Pro Se office only.  Cancellation of Oral Argument without a court order and reason presents another reason to support

removal of this case based on federal due process violations continuing in federal court. Those violations must be addressed in federal court. Pollack requested oral argument on this case.

13. This Court's Individual Practice Rules is not REQUIRED a pre-motion conference before a reconsideration motion, and so none was set by the Court.

14. The Court's same rules require that such a promotion conference is required for any other motion and yet none was set by the Court in this case on request by the petitioner before its remand motion.

15. It is sincerely believed that the Judge has not been privy to the activities to this case.

16. Kral Clerkin Law Firm Appeared on the docket because it was paid or compensated to handle this case as a favor to Cabble, not as an "error" as stated falsely in the purported "orders" [docket entries 17, 18, 19] posted by a Clerk – not the Judge on December 9, 2009. In fact, the entries are facially false because Cabble's former law firm did not automatically appear on the docket on the opening of the case as the docket from that time period proves. The Kral Clerkin firm name never appeared on the docket until long after the case was removed and docket entries were made.

17. This case was set up to avoid any contact with the Judge.


WHEREFORE, RESPONDENT seeks an order of immediate removal and an investigation into the crimes set forth herein.

Dated:  Riverhead, New York
        December 10, 2009

_____
Ruth M. Pollack, Esq. Sui Juris

Sworn to before me this _10_
Day of December 2009.

_____
Notary Public

JANET M. TOOKER
Notary Public, State of New York
No. 01TO5051905
Qualified in Suffolk County
Commission Expires November 13, 20_13_

9

**United States District Court**
**Southern District of New York**
------------------------------------------------------------------------x

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION:  SECOND JUDICIAL DEPARTMENT
----------------------------------------------------x

2009-00948
In the Matter of Ruth M. Pollack,
Admitted as Ruth Marie Pollack, an
Attorney and counselor at law,

'09 CIV 7570

CIVIL ACTION No.
NOTICE OF REMOVAL

Grievance Committee for the
Tenth Judicial District,
                         Petitioner,

Related  Action:
Anderson v. State of New York, et al. 07cv9599

Ruth M. Pollack,
                         Respondent.

RECEIVED
AUG 3 1 2009
U.S.D.C. S.D.N.Y.
CASHIERS

(Attorney Registration No. 1892660)

------------------------------------------------------------------x

**PLEASE TAKE NOTICE that on August 28, 2009 a petition for removal was filed**

**with the Clerk of the United States District Court for the Southern District of New**

**York and that, as a consequence, the proceeding :**

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION SECOND JUDICIAL DEPARTMENT

---

2009-00948
In the Matter of Ruth M. Pollack,
Admitted as Ruth Marie Pollack, an
Attorney and counselor at law,

Grievance Committee for the
Tenth Judicial District,
                         Petitioner,
Ruth M. Pollack,
                         Respondent.
(Attorney Registration No. 1892660)

---

EX "A"

Copy 2 of 2
ORIGINAL

**has been removed to that Court.**

Dated: August 28, 2009
      Riverhead, New York

Ruth M. Pollack, Esq., Sui Juris
21 West Second Street · Suite 13
Post Office Box 120 (required)
Riverhead, New York 11901
Tel. 631-591-3160
Fax. 631-591-3162
ruth@ruthmpollackeq.com

2

**United States District Court**
**Southern District of New York**
------------------------------------------------------------x
SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION SECOND JUDICIAL DEPARTMENT

2009-00948
In the Matter of Ruth M. Pollack,
Admitted as Ruth Marie Pollack, an
Attorney and counselor at law,

                                        **Petition for Removal**
                                        **Civil Action  No.**

Grievance Committee for the
Tenth Judicial District,
                            Petitioner,

Ruth M. Pollack,
                            Respondent.

(Attorney Registration No. 1892660)

------------------------------------------------------------x

Ruth M. Pollack, Esq. Petitioner **Sui Juris, hereby petitions for the removal of the**
**above proceeding.**

REMOVAL is respectfully sought from the Supreme Court, Appellate Division of
the State of New York, on the following grounds:

    1. A petition was filed and commenced in the Supreme Court, Appellate
Division, Second Department, dated June 30, 2009 purporting to obtain relief in a
proceeding which will deprive petitioner of due process of law, equal protection of law
and by fraud, in consequence of a pattern of racketeering in violation of 18 USC 1961 et
seq. and thus this proceeding has become removable pursuant to 28 USC 1446 and
related removal statutes;

**Note:  Jurisdiction Has Been Rejected By the Appellate Division -**
The Appellate Division, State of New York, Second Department has repeatedly rejected my requests for relief in this case.  I appeared at the Appellate Division for the fourth time in two (2) weeks, traveling from my office in Riverhead, New York as a disabled attorney to seek to file my Petition for Mandamus, Prohibition and a stay pursuant to Article 78 CPLR.  On the last occasion, on Friday, August 28, 2009, I submitted the same papers without a stay.  I waited over an hour, the clerk finally returned my Order to Show Cause for a Writ of Prohibition and Mandamus with the notation:  **"Refused to Sign No Jurisdiction CPLR 506".**  *See* annexed Rejected Writ of Prohibition and Mandamus as Exhibit "B-1".  Accordingly, having exhausted my options on the state level, I seek the relief sought in this removal petition.

1-A

2. Removal is also sought under 18 USC 1961 et seq. and 42 USC 1973, and 1981 to 1985 on the ground that this Court has jurisdiction of the claim or cause of action alleged in such adversary proceeding or action under 28 USC 1332 and 1343.

3. Thirty days have not elapsed since service or otherwise of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable. Such event occurred after July 7, 2009 when I as respondent first received the annexed Decision and Order on Motion dated June 23, 2009 and Petition dated June 30, 2009, and letter dated August 3, 2009 of Special Referee James A. Gowan, Esq., which I received on August 7, 2009 (Copies of these documents annexed as Exhibit "A"). 28 U.S.C. §1446(b).  I have taken no action which would waive my right to remove this proceeding.  Markantonatos v. Maryland Drydock Co., 110 F. Supp. 862, 864 (S.D.N.Y.1953).  True and correct copies of my answer with affirmative defenses and my Demand to Produce and for a Bill of Particulars are annexed as Exhibit "B".  True and Correct copies of "The Memorandum and Verdict" and the "Judgment of Conviction of a **Petty Offense**" of Judge Allyne Ross are annexed as Exhibit "C". *Emphasis added.*

4. It is respectfully submitted that the Tenth Judicial Department Grievance Committee ("10th"), Chief Clerk James Edward Peltzer ("Peltzer") and the Supreme Court, Appellate Division's ("Appellate Division") actions in the proceedings complained of did not constitute "a mistake, though honest judicial act." Quoting Justice Douglas, in his dissent in Pierson v. Ray, 386 US 566 (1967).

5. When a judge acts intentionally and knowingly to deprive a person of his/her constitutional rights, "he exercises no discretion or individual judgment; he acts no longer

as a judge, but as a 'minister' of his own prejudice." Id. at 568.

6. Petitioners Appellate Division of the Second Department ("Second Department"), Chief Clerk James Edward Peltzer ("Peltzer") and the Tenth ("10th") had no legal authority to violate my guaranteed constitutional right to due process of law, substance and procedure.  Petitioners were not engaged in any "lawful exercise and performance of [their] respective authority" because they and each of them were acting in violation of that authority, therefore, although some of petitioners may have worn a black robe, they were not acting in any judicial capacity.  The United States Constitution, 14th Amendment prohibits a state from depriving a person of life, liberty, or property, without due process of law: or to deny to any person within its jurisdiction the equal protection of the laws.

7. In this state "proceeding", petitioners were not acting within any judicial capacity when they knowingly, willingly, unlawfully, fraudulently and with malice intent violated the law.

8.  Clerk Peltzer was not acting within his judicial capacity as a clerk and was not a judge when he knowingly, willingly, unlawfully, fraudulently and with animus did not have personal or subject matter jurisdiction and signed a purported "order" of the Court (Exhibit "C") instead and in place of a judge or a justice.

"Jurisdiction is the right to pronounce judgments acquired through due process of law." 10 Co., 73 a: 1 Bulstr., 211; *Hale's Anal.* Sec.11; b.3, c.8, nm. 4; U.S. v. Arredndo, 6 *Hurd on Freedom and Bondage*, 22; Sprague's *New Science of Law*, 4; In re Tirnan, 5 B. & S., 645, 672; *Du Ponceau on Jurisdiction*, 21; Lock v. Ashton, 12 Q.B. 874; Martin v. Marshall, Hob., 63; State v. Jurisprudence, 793."

Even if it is argued that petitioners ever had jurisdiction, at all times, petitioners

knowingly, willingly, unlawfully, fraudulently and with animus acted as trespassers of

the law, and when a judge does not follow the law, the judge loses subject-matter

jurisdiction and the judge's orders are void, of no legal force or effect.  As the Court's

agents, servants and employees, Clerk Peltzer and the 10th Judicial Department Grievance

Committee each are jointly and severally liable for the acts performed by them in the

Court's name.

9. At all times herein, petitioners Appellate Division, an appellate court, James

Edward Peltzer, a clerk, and the 10th, a committee, did not comply with the

Constitution, so its orders herein are void.  In re: Sawyer, 124 U.S. 200 (1988) As a

result, it is without jurisdiction, and petitioners Peltzer and the 10th have engaged in an

act or acts of treason.

10. At all times herein, petitioners, or each of them, committed the acts

knowingly, willingly, unlawfully, fraudulently and with animus withheld and failed to

accurately state that **at most**, if I were to be convicted, without due process of any kind,

at most it would have been conviction of a "**petty offense**" and not a crime under either

state or federal law.  In addition, as I placed the 10th Judicial District Committee on

notice of this fact, the Committee was required to report this fact to the Appellate Court

and to refrain from seeking the order falsely characterizing me as a "convicted" criminal

or as an attorney "convicted of a crime" both of which statements are false and grossly

defamatory.  "Any judge or attorney who does not report the criminal activity of another

are guilty of misprision of treason, 18 U.S.C. Section 2382.  The 10th committed fraud on

the Court by advising it through Mr. Peltzer, that I had any criminal conviction.  The 10th

Judicial Committee was well aware of the fraud by Mr. Peltzer.

11. Clerk Peltzer purported to be a state officer but acted in a disloyal manner and in the usurpation and abuse of his official duties. What are his duties? Do his duties include signing off on orders while acting as a judge when he is only a clerk? The dispossession or other infringement of personal or property rights constitutes official oppression. Mr. Peltzer's acts, in concert with Rita Adler, Esq. and the 10[th Judicial] Department Grievance Committee and, it may be, the Second Department, constituted the deprivation of my rights to gainful employment as a licensed attorney and to earn a living as an attorney as I lawfully did on a state and federal level for over 26 years. Mr. Peltzer's signing of an "immediate" suspension order appointing Ms. Adler and her committee to hold a hearing, without any prior hearing, due process, or right to do so, was fraud, miss-use of their powers, perversion and false statement of the law of contempt and caused irreparable harm to me, as I am is innocent of the accusations against me. They deprived me completely of due process before suddenly suspending me. In addition, the Second Department "Decision & Order On Motion" dated June 23, 2009 clearly states "**that court**" meaning the EDNY, and in no other place or court. The two years probation was stated to be in "that court" (EDNY) and nowhere does the Appellate Division & Order On Motion state any other place or court:

> The Grievance Committee submitted certified copies of the judgment dated September 26, 2008, the memorandum and verdict dated September 19, 2008, and the sentencing minutes dated September 26, 2008, and **took the position** that the respondent's conviction qualifies as a **serious crime** within the meaning of Judiciary Law §90(4)(9) and 22 NYCRR 691.7(b). Notwithstanding **that** order of suspension, the respondent continued to practice law in the United States District Court, Eastern District of New York. Accordingly, by order dated December 31, 2008, the Committee on Grievances for the Eastern

5

District of New York suspended respondent from the practice of law before **that court for a period of two years.**

**(Emphasis added).**

## PETITIONERS USED A CRIMINAL LABEL WHICH IS NOT IN THE NEW YORK STATE PENAL CODE OR FEDERAL CRIMINAL CODE TO PUNISH, DEFAME AND RUIN RESPONDENT

12. The Appellate Division order unlawfully signed by CLERK Peltzer further labeled me a convicted criminal, which is a patently false label, as only a "petty offense" was ever found. Since my 8- year old case, Stuart v. Department of the Interior, United States Park Police and Ragusa [99CV 8163] was summarily dismissed by EDNY Judge Joseph Bianco and with the consent of the United States Attorney of the EDNY, a severe and legally inappropriate sanction that punished and prejudiced my client and me beyond measure. Serious as well is the fact that since Judge Bianco's order to show cause to hold me in criminal, not civil, contempt, **I have never faced any of my accusers, was denied the attorney of my choice, was denied a jury trial, had no discovery, denied any evidence of wrongdoing, and denied of any proof of having practiced law in the EDNY during my 45 day suspension in that court. Indeed, my appalling mistreatment was like leading a blind man to fall on the tracks in the path of an oncoming train. At all times I was figuratively blindfolded and handcuffed, lied to and led, like a lamb to slaughter, as many judges and lawyers in this state and country have in these facially unconstitutional procedures.** At no time were any charges against me in the EDNY docketed under a criminal ("CR") docket number. Indeed, all dockets against me were filed under a "Miscellaneous" number, such as "MC", so that I could not even locate the hidden docket files in my own name without searching for them. I never committed any crime or any offense. My ability to file any

document on the PACER/ECF system was suddenly and without warning, cut off, in contravention of my right to file on the public docket.   I have paid for the public PACER access to the docket for filing and viewing cases for years and was instantly deprived of filing anything whatsoever without any due process. The day after the dismissal, on June 6, 2009, at my ongoing Family Court case in New York City Family Court, 8 to 10 court officers, without warning or provocation, physically head and body locked me in open court and brutally bashed my body and threw me into the waiting area.   My witnesses can attest to these Nazi-like acts.

### The Deleterious Effects of the Bianco and Ross Rulings

13.  Judge Ross's verdict and order constituted an unconstitutional, illegal and unethical judicial imposition of a restrictive covenant on my ability to practice my licensed profession without due process nor any notion of fairness, justice and compassion for the impact of such action on my clients, who are now left without the prudent guidance and advice necessary to ensure that their legal matters will be prosecuted in a manner they sought in selecting me as their lawyer, attorney, counselor and advocate to faithfully, passionately and zealously pursue and resolve their claims, and obtain legally available remedies within a forum or tribunal with rules designed to preserve an atmosphere for the orderly presentation of evidence, efficient debate of the relevant issues, and respected resolution of disputes, all as established by statute, case law and custom under the American system of jurisprudence. The adoption of the judgments resulting from Judge Ross's and Judge Bianco's rulings by judicial officers and their agents of the Courts of the State of New York further exacerbated the Constitutional and other injuries sustained by me as respondent and my clients, none of whom will be, nor

can be compensated in any manner contemplated or sought when they initially selected the course of action mutually developed with their chosen legal representative and advocate.

14. The imposition of restrictions and barriers to practice a profession when licensure initially is granted by state authorized officers of the court after practitioners have engaged in rigorous didactic and practicum training, testing and examinations by senior members of the bar, and review of personal credentials and evaluations by a licensing board, should be undertaken only after a careful objective review of relevant facts and circumstances in a forum where the evidence can be subject to rigorous examination and the results respected by the parties who will be affected by the outcome. Errors and omissions passed off by judicial officers and their agents as irrelevant and non-substantive serve to create an atmosphere of mistrust and lack of respect for the proceedings. This also denigrates the rigorous training and education that lawyers and attorneys are subject to in law school for precision and accuracy involved in undertaking representation of a client's case. Accurate, precise and truthful representations of intent of the client, whether in drafting a contract, will or deed, or in undertaking a judicial or administrative proceeding on behalf of a client is almost considered primordial for all legal practitioners and legal extenders such as guardians, paralegals and others no matter what the undertaking involves in any legal practice area, but even more important when a matter involves helping, fostering and promoting better lives for those with special needs, disabilities, and other physiological or psychological impairments and inhibitions, and if litigation is involved, in seeking to redress perceived wrongs and misconduct that affect lives of litigants, their families, friends and others in positions of support.

15. By allowing the misperception to unfold that I ever criminally violated my oath to serve as a compliant member of the bar in good standing has commenced a cascading domino effect of misperceptions, unfounded innuendo and, in some cases, outright lies about the nature of the time and effort I have expended and other legal practitioners and those assisting them in the legal system to advance their personal cause and bring about harmonious lives and supportive environments.  Once evidence becomes tainted, or the proceeding mistrusted of objectivity, justice may not be found.  Our law provides that any person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity that denies or impedes another in the exercise or enjoyment of any right, privilege, or power commits official oppression.

## APPLICABLE LAW SUPPORTING REMOVAL

16. Petitioners below – the Second Department, Mr. Pelzter and/or the 10th -- were not acting within their judicial capacity when, knowingly, willingly, unlawfully, fraudulently and with animus, they did conceal material facts which did amount to culpable misrepresentations no less than to have made out intentional false statements. Fraud consists of anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, or whether it be direct falsehood, by speech or silence, Moser v. DeSetta, 589 A. 679 (Pa. 1991).   At no time have petitioners been immunized for official conduct which violates rights protected by civil rights act; 42 USCA §1983; Bukirk v. Seiple, 560 F. Supp. 247 (E.D. Pa. 1983).

17.  Clerk Peltzer was not acting within his official capacity as a judicial clerk when he knowingly, willingly, unlawfully, fraudulently and with evil intent participated in a matter where he had a direct, personal and substantial interest that required his refusal to

sign any order suspending me.  Mr. Peltzer had absolutely NO authority to sign a

purported "order" of the Appellate Division. The Order was and is null and void **ab

initio.**  Moreover, none of the petitioners had any authority to suspend me without any

due process or hearing.  Again, the suspension providing "immediately … until further

notice" is null and void **ab initio**.

> *See* In re Murchison, 349 U.S. 133, 126, 75 S. Ct. 623,
> 625, 99 L. Ed 942 (1955). The due process clause may sometimes bar trial
> by judges who have no actual bias and who would do their very best to
> weigh the scales of justice equally between contending parties. But to
> perform its flight functions in the best way, justice must satisfy the
> appearance of justice. Murchison, *supra*, at 136. (citations omitted)
>                 …fairness of course requires an absence of actual bias in
> the trial of cases, but our system of the Law has endeavored to prevent
> even the probability of unfairness. To this end no man can be a judge in
> his own case and no man is permitted to try cases where he has interest in
> the outcome. Murchison, *supra*, at 136.

18.  Among the legal authorities which support the removal of the

proceeding to this Court is 28 U.S.C. § 1442, which provides for "removal of civil

or criminal actions against 'any officer of the United States or any agency thereof,

or person acting under him' for acts committed under color of office." *Federal

Civil Practice*, at 88 (G. M. Vairo, Ed-in-Chief, NYSBA 1989 & Supps.).

19. It is well-established that **Under color of authority** is a legal phrase used in

the United States indicating a person is claiming or implying the acts he or she is

committing are related to and legitimized by his or her role as an agent of governmental

power." *Judicial and Statutory Definitions of Words and Phrases*. West Publishing

Company, West Publishing Co., St. Paul. at 763.  Here, the phrase applies in both the

state and federal context.  This is because the proceedings being removed are being used

by the state court, appellate court and a state-run grievance committee to punish me based on allegations, never proved, that I ever committed any criminal act, much less any "serious crime".

20.  I was punished repeatedly by both state and federal judges and Grievance Committees before whom I never appeared, and before whom I never had a scintilla of due process before each of my three (3) suspensions.  The EDNY Grievance Committee failed to provide me with any evidence of a violation of my 45-day suspension from practice in the EDNY.  Indeed, there cannot be any proof as I ever violated the suspension because I did not.  That suspension became a two (2) year long additional suspension ONLY in the EDNY, again, with no due process, discovery, witnesses, opportunity to confront my accusers, no trial, no hearing, no meeting with the Committee, no properly formed EDNY Grievance Committee, no service on me of charges that I violated any suspension; in sum:  no due process at all.   I have never been jailed or fined.  My punishment appears calculated only to ruin my ability to practice law and to prosecute my cases in the state and federal courts. I have suffered immeasurable damages to date without just cause.

**Respondent's Civil Rights Are At Issue**

21. The state action has been predicated on this illegal federal action by federal and state actors. 28 U.S.C. §1443 provides that a civil or criminal action brought in state court may be removed by a defendant who (1) is denied or cannot enforce in the state courts 'a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof', or (2) is charged with having

committed an act 'under color of authority derived from any law providing for equal rights…." First, I have been denied and cannot enforce my civil rights to due process in state court. The petitioners' actions, coupled with the rules relied on by the Grievance Committee are violative of my constitutional rights and those of any judge or attorney who is subject to them. I have no right to appeal the proceeding to which I am being subjected. When I sought a stay of the illegal order in the Second Department, it was denied because Appellate Division Clerk Peltzer stated to me that "we cannot stay ourselves." This huge gap in protections for attorneys and judges creates a constitutional problem that this Court may fairly resolve for the benefit of all.

## A Substantial Question of Federal Law Exists

22. My twenty-six (26) plus year personal and professional unblemished reputation has been seriously ruined and sullied by what are clearly public and private political interests by the miss-use of our very own court system. This is part of a pattern and practice of attacking attorneys and judges across the nation for upholding the law and representing individuals, whistleblowers, disabled litigants, and not large corporate interests and municipal entities. Since 2003, I myself have been a physically disabled whistleblower attorney who has suffered, after surviving ovarian cancer, the total, intentional destruction of my client's original case file in the Eastern District of New York Courthouse in Central Islip, New York ("EDNY") containing five (5) years of my detailed, painstaking professional work in a meritorious action for discrimination against a school district ("Valley Stream U.F.S.D. No. 24") a part of which was recently skewered by the New York State Comptroller for the theft and misappropriation of

millions of dollars of public funds. The balance of the Comptroller's Report has yet to be published concerning District No. 24.

23. Petitioners violated the ANTI-SLAPP Laws after I testified before the New York State Judiciary Committee in a public hearing about the corrupt practices of the Second Department 9th and 10th Judicial Department Grievance Committees actions against me this June 8, 2009 and the cases I was working on at the time I was attacked. Immediately after the hearings, available on the Internet, petitioners immediately increased its attack on me, by seeking to take my license to practice law in New York away from me in an immediate suspension of my license with no due process or hearing. The timing of this action is no coincidence for a violation of the Anti SLAPP laws.

24. In addition to my work on the Chesney case in which we learned as recently as July 2009 that our case docket and original case file was destroyed by court personnel, I have been working on other cases. Among the cases I was engaged to work on as of December 2008, were the matrimonial and criminal cases of Michael Kelly. In Kelly v. Kelly, a case in Rockland County, I learned that the Family Court Judge assigned to the divorce trial was never assigned to the case in Supreme Court in accordance with the New York State rules of the Chief Administrator and as such she has never had jurisdiction over his case. Mr. Kelly is a disabled man, who owned his home with accidental monies that are not subject to Equitable Distribution. He has been repeatedly threatened with jail time to keep him out of his own home. I also uncovered at trial extensive deed, check and mortgage fraud and forgeries by his wife, and court-ordered excessive

13

overpayments in child support by Mr. Kelly.  I objected to this mistreatment of

my client.

25. At the time of the ramping up of petitioner's attacks upon my New

York State license, I was also engaged in legal work in my client Dominick

Lieto's cases.  (*See* complete article "Trashing A Life Away" about the case in the

Westchester Guardian, July 23, 2009, copy annexed as Exhibit "D")  I was

investigating what turned out to be the fraudulent foreclosure of the home of a

disabled man, wherein ten, 30 yard dumpsters were used to discard this man's

personal belongings and dump them across his front lawn:

Imagine coming home from a routine shopping trip to find garbage dumpsters in your driveway and scattered around your front lawn, and a bulldozer scooping up your possessions and tossing them into the trash. Hollywood fiction, right?  Or, maybe an act of retribution against political opponents in Iran?

Sadly, neither. This unconscionable scenario is very real and happened right in Westchester County. It happened to an elderly, disabled man in Somers just two weeks ago. Domenick Lieto spoke to the *Guardian* at length about the tragic events in his life that led up to his eventual eviction from his house.

Lieto was once married with children and gainfully employed. Eventually he and his wife divorced; Lieto became disabled, was involved in a serious car accident, and finally lost his job.  But worst of all, his son committed suicide in Lieto's home, a home that Lieto is now barred from entering, and an event that many individuals might never have recovered from. Not being able to work due to his disability, Lieto fell behind in his taxes and his child support for his other children. That's when his problems multiplied.

Desperate for money, Lieto applied for a mortgage in 2004 from Emigrant Bank when he was 57 years old. At the time, he had no mortgage at all on his home. In fact, Lieto told the *Guardian* that he never had a mortgage in his life; the application he made in 2004 was the first time he ever applied for such a loan. Being desperate for cash, and completely unfamiliar with the mortgage lending process, Lieto was an easy mark.

Mortgage brokers are not obligated to provide financial advice to their clients. They are also not trained accountants and do not ask the specific questions that would uncover underlying problems that could impede an individual's ability to pay. Neither, as is now clear in Lieto's case, do they pay attention to the warning signs. Many brokers receive commissions or performance bonuses for every mortgage deal they close. To them, it's all about the commission check. Whether, or not, they are selling you a mortgage you cannot afford apparently doesn't bother them so long as their bonus check clears.

Had anyone at Emigrant Bank looked past their loan application to review Lieto's personal information when he came in for a mortgage, they might have properly advised him against taking any mortgage at all. With no mortgage on a home that had appreciated in value considerably, a strong housing market in 2004, the mounting pile of child support and tax payments, and no foreseeable income, any good financial advisor would have recommended that Lieto sell his house, pay off his debts, keep some cash in reserve, and downsize to a more affordable home.

But Emigrant was not obliged, under New York State banking laws, to provide Mr. Lieto with financial advice. They were in the market to make money, even at the expense at a disabled, older man nearing retirement age, who, with no foreseeable source of income, clearly would not be able to make the monthly payments on the loan.

The Emigrant executives, and thousands of their counterparts across the country, probably received significant bonuses in 2004 for pushing these types of mortgages. And, these bankers have all just been rewarded for their prior profits with a taxpayer bailout. Meanwhile, the Lieto's of the world defaulted on loans they never should have been given, eventually returning to their homes to find the local sheriff s in their yards, thereby losing everything they ever owned.

What makes the Lieto case especially sad is the fact that it never should have happened at all. If he had received the proper financial advice up front, his property taxes could have been paid, his child support would be up to date, he would have had some money set aside, and he could now be living in a smaller, more affordable home. Instead, he now has no home and no money for child support.  A handful of professionals profited immediately; but, an entire family would eventually suffer.

But how did this happen at all? Was anyone, at any step in this process, obligated to stand up and say "Stop the Madness"?  The answer is no. In a prior era, bankers awarded loans based on what was known as "the three C's" - character, capacity, and collateral:

*Character:* how a person has handled their debt obligations in the past by reviewing credit history and personal background, honesty and reliability of the borrower to pay credit debts.

*Capacity:* how much debt the borrower can comfortably handle. Income is investigated and any legal obligations, which could interfere in repayment, are reviewed.

*Collateral:* the available assets of the borrower, such as real estate, savings or investment that could be used to repay debt if income is no longer available due to loss of employment, etc.

During the frantic "junk mortgage" years, the character of the borrower and his capacity to repay were ignored, the belief being that the banks could always cash in the collateral, if needed. In other words, if the borrower didn't pay, the banks and mortgage companies believed they could simply take the house and sell it at a profit in the hot housing market.

Mortgages were drawn up with clauses that never existed before. Lieto was given a mortgage where the lender, Emigrant Bank, specifically withdrew their right to investigate his income!  They enticed him with an offer of $245,000 and a then low interest rate of 6.125%. Despite the fact that Lieto was nearly 60 years old and close to retiring, Emigrant offered him a thirty year loan. How did they expect him to make the $1,400 a month payments from his Social Security checks a few years down the road?

Didn't anyone at the bank even bother to do the math, or even apply common sense to the transaction? Unless Emigrant could prove Lieto had other sources of retirement income, such as a pension, or investments, he should never have been given a 30-year mortgage at his age at all!

Reading the fine print in Lieto's mortgage, he was doomed to fail, ironically due to his financial situation. Only individuals with the best credit history, secure sources of income, and significant sources of capital, are offered the best lending deals. Those in Lieto's situation are offered loans that are geared towards failure. Lieto's mortgage had an initial rate of 6.125% but this rate was not "fixed" for the 30 year life of the loan. Lieto only qualified for a variable interest rate mortgage, meaning the interest could go up or down, increasing or decreasing his monthly payments accordingly.

In the loan Emigrant offered, the interest rate could increase as much as 3.5% in one year. In very fine print, Emigrant noted that this 3.5% was not over the 6.125% that Lieto was already paying, but rather the 3.5% would be calculated as an increase over the "current index", without defining exactly what that meant or what index they would be using. In the small print on the loan papers, print so small that no one over the age of 45 would be able to read it easily, Emigrant noted that the interest could actually increase to as much as 11.125%, 5% over the 6.125% Lieto was paying. And that's even if Lieto paid his mortgage on time. If he defaulted or was late with a payment, his interest rate would skyrocket to 18%.

Mortgage agreements are not  bound by law to disclose the dollar amount of the monthly payments for changes in interest rates. Anyone not adept in math would not realize just what an impact such an increase would have on their monthly payment. Loan papers only reveal the interest rate changes and not the dollar impact of the rate changes; and, to the average borrower, 6% and 5% are low numbers and don't sound bad. But the 6.125% interest rate translates to a monthly payment of $1,488. The total interest paid at this rate over the life of a 30 year loan is $291,000 alone.

An individual borrowing $245,000 for 30 years eventually pays the bank or mortgage company back $536,000 in total. If Emigrant ever raised the rate on their loan to 11.125%, the monthly payment would skyrocket to $2,356, total interest payments on that rate would be $603,000, and the total repayments would be $848,000. That information would give the average borrower a far greater shock than what the disclosure of the 6% rate and 5% increase would suggest.

In Lieto's situation, he never got to the point where his interest rate changed. As should have been expected by the bank, Lieto was quickly unable to make his mortgage payments and defaulted on the loan within months. Once again, his problems multiplied because he had no one to counsel him. According to Pauline Galvin, a referee in foreclosure transactions for the Westchester County Courts, "Too many individuals get into real problems once they receive that default notice from the bank. They are embarrassed that they cannot make their payments and afraid to tell anyone. They never call the bank or ask for advice."

Lieto told the *Guardian* that he never received or asked for any government assistance in his life, even with his disability. Therefore, when presented with a default notice, he never reached out to the bank or a local counseling agency for help.

There are automatic controls that now come into play once an individual is facing foreclosure or bankruptcy. However, given the amount of time it can take many individuals to realize the extent of their difficulties, that assistance is often too late. **A better solution would be to take the existing credit and bankruptcy laws and expand them to offer assistance to a borrower the moment they receive their first default notice in the mail so that hopefully they can renegotiate their debts and avoid foreclosure and eviction altogether.**

16

In the interim, Galvin advises that the first thing anyone should do when faced with a default notice is to call the bank. "The bank isn't interested in owning your home in this housing market. They want to work with you." Calling the bank has legal as well as financial advantages according to Galvin. "Once you call the bank, you are protecting yourself and certain procedures have to be followed legally. The foreclosures that are done in a few months are usually those where the individuals didn't contact the bank so the bank had no other option but to proceed to foreclosure," Galvin said.

Trying to handle a mortgage default situation alone can mean missing the delivery of important notices. Many litigants respond to Court appearances themselves, not knowing how to defend their situation. In the Court papers for Lieto's case, the Court notes that Lieto missed a critical Court hearing and thus was not present to defend himself. But once an attorney is appointed by the Court as the referee in a foreclosure action, the borrower now has someone responsible to inform him of critical dates and Court notices.

The speed of a foreclosure depends upon the individuals involved. "Some bank attorneys will work on a foreclosure action the minute it hits their desk and some will toss it to the side for months," Galvin noted. Therefore, a borrower with a default notice should not assume that they have time on their side – the sooner they contact the bank, the better. Borrowers should also not assume that the attorneys involved are taking all precautionary steps on their behalf or that all the papers were processed or filed correctly. In a Court matter, the definitive record of the case is the one on file with the County Clerk.

In Lieto's situation, his certified County Clerk record shows only one "affidavit of service" throughout the entire foreclosure proceeding. Yet, there are potentially several notices that Lieto may have been entitled to in his foreclosure proceeding. Other foreclosure cases the *Guardian* pulled in the County Clerk's system showed over a half-dozen affidavits of service in each record. Lieto's case, showing only one certified affidavit of service in the record, would warrant investigation to determine if, indeed, there where other notices sent out that were not properly processed.

Anyone faced with a foreclosure action should always obtain certified copies of their personal record from the County Clerk's Office throughout the proceedings to verify that the Courts and the attorneys are doing their jobs properly and that all the correct papers in their case are, in fact, properly filed in the record. If not, the foreclosure case may not be enforceable. Just as with other large institutions, mistakes can, and do, happen in the judicial system.

Galvin told the *Guardian* that the number of foreclosures in the Westchester area has increased dramatically. "We had a lot of foreclosures last year, but nothing like this year. The number of foreclosures has jumped incredibly. And very often now there are no willing buyers," she said. Having no one willing to purchase a home in foreclosure presents different problems. Galvin informed the *Guardian* that when there are buyers, it is her job as Court referee to make sure that the offer being made is reasonable and fair to the owner of the property. "It's also the responsibility of the court-appointed referee to make sure that there is no collusion between the lender and the buyer. It's my job to make sure there is no fraud" Galvin said.

Collusion and fraud are easier to rule out when there are a group of buyers bidding against each other for a property. In such cases, Galvin can negotiate a fair price for the owners who can often walk away from the foreclosure transaction with money in their pockets. And, in some cases, the owner, or a relative or friends, step up to buy back the house. But what happens to the owner when no one steps forward to buy the home?

In Lieto's case, his house was flipped from one division of Emigrant Bank to another. His house was purchased by Retained Realty, a division of Emigrant Bank. Since Emigrant now owned

the house, and had no desire to sell it in this housing market, Lieto was granted the right to remain as a tenant, and Emigrant, through its subsidiary, Retained Realty, now became his landlord.

However, while being offered the ability to remain in your own home as a tenant may seem like a fair deal, it removes whatever protections the borrower may have had under the referee system in the Westchester Supreme Courts where foreclosure actions are handled. **As a tenant, any legal issues are classified as tenant/landlord, and, with the exception of major urban areas such as New York City, these matters are handled by local town courts who often do not have the level of judicial sophistication, logistical processes, or even staff power to handle the volume and nature of cases now hitting their desks.**

This became evident to the *Guardian* when we went to Somers Town Court to physically examine the orders in Lieto's file that determined his eventual eviction two weeks ago. Somers Town Court is staffed by two part-time judges, Michael McDermott and Denis Timone. In addition to his Town Court duties, McDermott was also appointed by the Somers Town Board in 2007 to handle foreclosure proceedings at a rate of $175 an hour. However, according to his posting on the Somers Chamber of Commerce website, McDermott's specialty is general and commercial and insurance law, with no reference to him having any specialty or experience in housing law. Likewise, Timone, the judge who ordered Lieto's eviction, has an online yellow page listing which simply portrays him as a general practice attorney with no reference to a specialty in housing law. In contrast, the NYC Housing Court has 50 specifically trained housing judges, 1,000 housing staff members, and a litigant web site to explain all of the procedures in Housing Court. A trip to the Somers Town Court revealed an old building with limited air conditioning and tin metal cabinets for storage. Given the nature of evictions and the financial and personal details included in these records, these files must be retained in fire-proof cabinets in rooms with fire-retardant materials and fire-prevention systems. A leaking roof in the Somers Town Court would destroy any records kept there.

While these records are kept in flimsy unlocked cabinets, access to them is not a simple matter. The *Guardian* contacted the Somers Court asking to review the files in Lieto's case directly so we could perform our due diligence. The court clerk informed this reporter that we had to provide it with the name of the files we wanted to access in advance. As if. As readers of the *Guardian* well know, this reporter used to be a global auditor for Reader's Digest, reporting to the Board of Directors who included Lynne Cheney and David Rockefeller. As a trained investigator, I would never reveal specifics of an investigation before I am present, possibly allowing those records to be tampered with in the interim. When pressed three times as to why I would not reveal whose files I wished to examine, I offered this explanation, one which is in full accordance with Generally Accepted Auditing Standards.

The Court, however, took umbrage at my inference that court records could be tampered with. Mc-Dermott told me that my inference was "unseemly". However, due to the volume of mishandled, lost, and tampered court files that this reporter has evidence of, my inference was not only not unseemly, but also not without basis. The *Guardian* and this reporter have already written about the loss and destruction of litigant's files in our local courts multiple times.

Amusingly, it took me some time to determine who was addressing me in the Town Court at all. No one introduced themselves unless pressed for a name; indeed McDermott had to be asked point blank three times by me to identify himself! When I asked him who he was, McDermot initially replied "I'm the judge". Frankly, given that I was in a Court, the Irish side of me had to resist the temptation to respond "no sh**t, Sherlock, but what's your name!"

But the lack of proper retention systems, blockages to obtaining records, and the offhand approach to dealing with individuals in the local town court system should be sufficient proof to our State Legislature that such personally horrendous actions as foreclosures and evictions should only be

18

handled by specialized experts and counselors. Assemblyman Greg Ball, the local State representative for Somers, agrees, saying, "These situations are absolute tragedies that are occurring thousands of times across our State. The amount of foreclosures and evictions reflect a lack of relief by both the Bush and Obama administrations to the victims. I am going to seek to provide financial counseling to mainstream middle class individuals to help them deal with this crisis and not use the State's share of the Federal economic relief funds to bailout the lenders who should be put in jail."

In addition to the relief and protection needed by the victims, the courts themselves need to be retrained to deal with the level and type of foreclosures hitting their desks. Emigrant Bank was allowed to change the venue of the eviction from the protection of the Supreme Court to local Town Courts because they changed the party to the action from Emigrant Bank to Retained Realty, Inc. However, since Retained Realty is owned by Emigrant Bank, the Supreme Court judge, Robert DiBello, should never have allowed this switch because the party to the action really didn't change, Emigrant Bank was still the parent company and therefore still the owner. DiBello should have kept the case in Supreme Court where Lieto had a court-appointed referee helping him. In contrast, Lieto had limited protections in the Town Court where the Somers Court's own record states, "The premises were not subject to any City Rent Law, Rent Stabilization Law, or the Emergency Tenant Protection Act."

Because Lieto's case was handled in two different courts, courts that do not have cross-audit verification of records or indeed any first-hand knowledge of each other's case, discrepancies between the cases were not investigated. The affidavits of service for the Emigrant Bank for Supreme Court, and for Retained Realty, in Town Court, by their mutual attorney, Alan Katz, show his legal assistant signing her name as Debbie Gottschalk in 2007, Debbie Correa in 2008, and back to Gottschalk in 2009. When this reporter asked Katz to explain why Gottschalk/Correa kept changing her name he inappropriately asked me if I had ever been married and had a maiden name. When I then asked if this was simply a matter that Ms. Gottschalk/Correa had been married and divorced in the space of two years and legally changed her name twice, Katz angrily instructed me to "check the laws of defamation" and hung up the phone on me.

**This reporter has dealt with overbearing Fortune 100 executives, pompous judges, frustrated taxpayers, and infuriated legislators, but never once in my 30-plus years of experience working have I ever encountered a professional who actually hung up the phone on me. I must admit, however, that in my teenage baby-sitting years, I did encounter hormonal pre-teens and whiny toddlers who committed similar acts! But Katz's non-response left me wondering what the answer really was, and why he wouldn't give a simple answer to a reasonable question?**

Lieto's case exposes other potential causes for concern when such matters are handled by separate courts or even separate judges. Without the cross-check and consistent handling by court individuals familiar with a case, separate courts and judges have no way of knowing if the property sold in one Court was to individuals affiliated with mortgage company/brokers/attorneys, who, using their inside knowledge of the case to pose under another corporate name or use their knowledge through others, could then profit in a separate court or before a different judge.

Retained Realty happens to be legitimately owned by Emigrant Bank. But what if it wasn't? How would anyone in the courts determine if such sales were a scam? The Atlanta, Georgia area has seen a rash of victims who have fallen prey to elaborate schemes to foreclose upon their homes. Court-appointed foreclosure referees are attorneys, not trained auditors. The New York State Courts should appoint auditors to investigate foreclosures to prevent similar tragedies.

Domenick Lieto came home to find photographs of his dead son tossed in the dumpsters. He was barred from entering the property by the local sheriff. It is impossible to imagine his heartbreak.

Our government representatives must set up protections with legislation dealing with lending institutions and judicial systems in order to assist individuals such as Dominick Lieto. At the very least, their lives, and property, should be treated with respect.

*The Westchester Guardian*, P. 16 Col. 1 (July 23, 2009) (Also available for viewing online at *The Westchester Guardian* Archives website)

26.   These cases are serious and involve criminal acts. This unequal footing on which I have suddenly been placed is unconscionable. While I never committed a criminal act in my 54 years, I have been deprived of my guaranteed rights to due process and equal protection of the law.  Through my continuing research, I am aware that the Department of Justice is providing full due process to accused war terrorists under our Constitution and the Geneva Convention. Paradoxically, United States Attorney General Eric Holder selected EDNY as a venue in which to try the cases against "enemy combatants", Taliban and Al Qaeda members to create the appearance of equal protection of law.  In stark contrast, our own courts deny our citizens the same protection.

27.   I am being continuously and repeatedly punished for testifying about corruption in the courts, and the corrupt tactics of the Ninth and Tenth Judicial Grievance Committees on June 8, 2009.   Most recently I reported and made complaints about corruption to the Eastern District of New York (EDNY) as well as the Second Circuit Court of Appeals, as did my client, Mr. Kevin Chesney and for representing clients in cases as set forth above involving corruption and whistle blowing.

28. Petitioners were not acting within their judicial or official capacities when they knowingly, willingly, unlawfully, fraudulently and with animus failed to perform

their official functions in the best way, as justice must also satisfy the appearance of justice.   The Second Department has allowed the 10th to act without the jurisdiction to do so to deprive me of my license to practice law and to work as an attorney for a "petty offense" conviction.  This is the equivalent to a traffic violation!  The doctrine of Double Jeopardy has been violated twice thus far as I have been characterized as a criminal.

29.   If petitioners are permitted to suspend attorneys and judges without notice and due process and adherence to the laws, there is no need for any court, or for our court system. There will be no need for judges! Compliance with the rules is essential to the integrity of the Judicial Process.   All of the above crimes and violations of law are violations of the "Poisonous Tree Doctrine": This constitutes a violation of the "Poisonous Tree Doctrine", as the first illegal act dates back to at least 2005, all proceedings since than are also fruit of the poison tree until such time as all poison fruits are vacated and rendered null. Further proceeding on this case can only result in more poison fruit. Until such time as the original poison fruit and all issue thereof are purged vacated and rendered null, all further proceeding can only be considered poison fruits.

30.  These proceedings and all related proceedings cannot continue and must be dismissed in their entirety until the poison fruits are pruned.

31.  The orders are deemed poisonous and are clear violations of the poisonous tree doctrine:  Any and all documents, orders stemming from the actions by the Tenth Judicial Grievance Committee, Peltzer and the Second Department in this proceeding against me begun by an order dated June 23, 2009 are all deemed poisonous under the "poisonous tree doctrine".  Machiavellian maneuvers by petitioners should no

longer be tolerated by this Court.

32. As Professor Siegel states:

> The present system is too tolerant of the deliberately evasive and dilatory litigant, increasing the expense of litigation in money, time, trouble, and feeling, and tending as a consequence to undermine public confidence in the courts." *New York Practice, 2d. Ed.*, David D. Siegel, Section 367 at p. 541 (1991).

It is also axiomatic in this nation that "[a] judge is not the court." People v. Zajic, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980). A judge is a state judicial officer, paid by the State to act impartially and lawfully. A judge is also an officer of the court, as well as are all attorneys. Whenever any officer of the court --including but not limited to Mr. Peltzer and Ms. Adler, both attorneys -- commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In Bulloch v. United States, the Court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted." 763 F.2d 1115, 1121 (10th Cir. 1985)

33. "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kenner v. C.I.R., 387 F.3d 689 (1968); 7 *Moore's Federal Practice, 2d Ed.*, p. 512, ¶60.23. The 7th Circuit further stated "a decision produced by fraud upon the

22

court is not in essence a decision at all, and never becomes final." *Supra.*

WHEREFORE, respondent respectfully seeks immediate removal of the within proceeding and such other relief as is just and proper.

Dated: August 28, 2009
       Riverhead, New York

Ruth M. Pollack, Esq. Sui Juris
21 West Second Street – Ste. 13
Post Office Box 120 (Required)
Riverhead, NY 11901
Tel.  631-591-3160
Fax. 631-591-3162
ruth@ruthmpollackesq.com

Sworn to before me
this 8t day of August 2009.

Notary

ROBERT M. DEVIVO
Notary Public, State of N.Y.
No. 01DF5040015, Nassau Cnty.
Commission Exp. July 24, 2013

23

# Exhibit List

## Annexed Exhibit A

1) Decision and Order on Motion dated June 23, 2009
2) Petition dated June 30, 2009
3) Letter to Respondent dated August 3, 2009 of Special Referee James A. Gowan, Esq., setting down case for place and time of hearing

## Annexed Exhibit B

4) Respondent's answer with affirmative defenses
5) Respondent's CPL Demand to Produce and for a Bill of Particulars

## Annexed Exhibit C

6) "The Memorandum and Verdict" of Judge Allyne Ross
7) "Judgment of Conviction of a **Petty Offense**" of Judge Allyne Ross.

## Annexed Exhibit D  D-1

8) "Trashing A Life Away", The Westchester Guardian, July 23, 2009
9) Rejected Writ - D-1

## United State District Court
## Southern District of New York

---

## State of New York Appellate Division
## Second Department

# Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

M88523
E/nl

A. GAIL PRUDENTI, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
ROBERT A. SPOLZINO
STEVEN W. FISHER, JJ.

---

2009-00948

DECISION & ORDER ON MOTION

In the Matter of Ruth M. Pollack, admitted
as Ruth Marie Pollack, an attorney and
counselor-at-law.

Grievance Committee for the Tenth Judicial
District, petitioner;
Ruth M. Pollack, respondent.

(Attorney Registration No. 1892660)

---

By letter dated January 27, 2009, the Grievance Committee for the Tenth Judicial District informed the court that the respondent was convicted on September 26, 2008, of criminal contempt pursuant to Federal Rules of Criminal Procedure rule 42 in the United States District Court, Eastern District of New York. She was sentenced by the Honorable Allyne R. Ross to unsupervised probation for a period of two years and suspended from the practice of law in the Eastern District of New York for a period of 45 days. The Grievance Committee submitted certified copies of the judgment dated September 26, 2008, the memorandum and verdict dated September 19, 2008, and the sentencing minutes dated September 26, 2008, and took the position that the respondent's conviction qualifies as a serious crime within the meaning of Judiciary Law § 90(4)(d) and 22 NYCRR 691.7(b). Notwithstanding that order of suspension, the respondent continued to practice law in the United States District Court, Eastern District of New York. Accordingly, by order dated December 31, 2008, the Committee on Grievances for the Eastern District of New York suspended the respondent from the practice of law before that court for a period of two years. The Grievance Committee for the Tenth Judicial District also submitted a certified copy of that order to the court and served the respondent with a notice pursuant to 22 NYCRR 691.3 informing her of her

June 23, 2009

MATTER OF POLLACK, RUTH M.

Page 1.

right to file a verified statement setting forth defenses to the imposition of reciprocal discipline. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on October 26, 1983, under the name Ruth Marie Pollack.

Upon the papers submitted to the court, it is

ORDERED that on the court's own motion, the respondent Ruth M. Pollack, admitted as Ruth Marie Pollack, is immediately suspended from the practice of law pursuant to Judiciary Law § 90(4)(f) as a result of her conviction of a serious crime, continuing until further order of this court; and it is further,

ORDERED that the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, shall promptly comply with this court's rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); and it is further,

ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this court, the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,

ORDERED that on the court's own motion, the Grievance Committee for the Tenth Judicial District is hereby authorized to institute and prosecute a disciplinary proceeding in this court, as petitioner, against the said Ruth M. Pollack, admitted as Ruth Marie Pollack, based on her conviction of a serious crime; and it is further,

ORDERED that Rita E. Adler, Chief Counsel to the Grievance Committee for the Tenth Judicial District, 150 Motor Parkway, Suite 102, Hauppauge, N.Y. 11788, is hereby appointed as attorney for the petitioner in such proceeding; and it is further,

ORDERED that the petitioner Grievance Committee shall serve upon the respondent and the Special Referee and file with this court a petition within 30 days after receipt of a copy of this decision and order on motion; and it is further,

ORDERED that the respondent shall serve an answer to the petition upon the petitioner and the Special Referee and file the original answer with this court within 20 days after service upon her of the petition; and it is further,

ORDERED that the issues raised by the petition and any answer thereto are referred

June 23, 2009                                                                                                    Page 2.

MATTER OF POLLACK, RUTH M.

to the Honorable James A. Gowan, a retired Justice of the Supreme Court, Suffolk County, 90 Sequams Lane East, West Islip, N.Y. 11795, as Special Referee to expeditiously hear and report, together with his findings on the issues, and to submit a report within 60 days after the conclusion of the hearing or the submission of post-hearing memoranda; and it is further,

ORDERED that if the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 691.10(f); and it is further,

ORDERED that the Grievance Committee's application pursuant to 22 NYCRR 691.3 to impose reciprocal discipline upon the respondent is denied as academic.

PRUDENTI, P.J., MASTRO, RIVERA, SPOLZINO and FISHER, JJ., concur.

ENTER:

SUPREME COURT, STATE OF NEW YORK
APPELLATE DIVISION SECOND DEPT
I, JAMES EDWARD PELZER, Clerk of the Appellate Division of the Supreme Court, Second Judicial Department, do hereby certify that I have compared this copy with the original filed in my office on 6/23/09 and that this copy is a correct transcription of said original.
   IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of this Court on 6/24/09

James Edward Pelzer
Clerk of the Court

June 23, 2009

MATTER OF POLLACK, RUTH M.

Page 3.

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND JUDICIAL DEPARTMENT
-----------------------------------------------------------------------------x

In the Matter of RUTH M. POLLACK,                    :
a suspended attorney.                                                          **NOTICE OF**
                                                     :                         **VERIFIED**
GRIEVANCE COMMITTEE FOR THE                                                    **PETITION**
TENTH JUDICIAL DISTRICT,                             :
                                                                              #2009-00948
                                    Petitioner,      :

               - against -

RUTH M. POLLACK,                                     :

                                    Respondent.      :

(Attorney Registration No. 1892660)
-----------------------------------------------------------------------------x

TO:    THE HONORABLE A. GAIL PRUDENTI, PRESIDING JUSTICE, AND
       ASSOCIATE JUSTICES OF THE APPELLATE DIVISION OF THE SUPREME
       COURT OF THE STATE OF NEW YORK, SECOND DEPARTMENT

       PLEASE TAKE NOTICE, that upon the annexed Decision and Order on Motion

of this Court, dated and entered on the 23rd day of June, 2009, authorizing the

institution of a disciplinary proceeding against the Respondent, RUTH M. POLLACK,

and upon the annexed Verified Petition of the GRIEVANCE COMMITTEE FOR THE

TENTH JUDICIAL DISTRICT, verified on the 30th day of June, 2009, a hearing will be

held at a time and place to be designated by the Special Referee, HONORABLE

JAMES A. GOWAN, appointed to hear and report with respect to each of the issues

raised by the charges set forth in the Verified Petition and the Answer thereto.

       Within twenty (20) days after receipt of this Verified Petition, Respondent shall

file the original Answer to the Verified Petition with the Clerk of the Appellate Division,



Second Judicial Department, together with proof of service of one copy of the Answer

on the Special Referee, HONORABLE JAMES A. GOWAN, 90 Sequams Lane East,

West Islip, New York 11795, and one copy of such Answer upon Petitioner.

Dated:       Hauppauge, New York
             June 30, 2009

                                   Yours, etc.

                                   RITA E. ADLER
                                   Attorney for Petitioner
                                   GRIEVANCE COMMITTEE FOR
                                   THE TENTH JUDICIAL DISTRICT
                                   150 Motor Parkway, Suite 102
                                   Hauppauge, New York 11788
                                   (631) 231-3775

                                   *Michele Filosa*
                                   ------------------------------------
                                   MICHELE FILOSA, Of Counsel


To:    JAMES EDWARD PELZER, Clerk
       Appellate Division, Second Department
       45 Monroe Place
       Brooklyn, New York 11201

       HONORABLE JAMES A. GOWAN
       Special Referee
       90 Sequams Lane East
       West Islip, New York 11795

       RUTH M. POLLACK, ESQ.
       Respondent
       21 West Second Street, Suite 13
       P.O. Box 120
       Riverhead, New York 11901

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND JUDICIAL DEPARTMENT
------------------------------------------------------------------------x
In the Matter of RUTH M. POLLACK,                     :
a suspended attorney.
                                                      :     **VERIFIED**
GRIEVANCE COMMITTEE FOR THE TENTH                           **PETITION**
JUDICIAL DISTRICT,                                    :
                                                            #2009-00948
                                    Petitioner,       :

                - against -

RUTH M. POLLACK,                                      :

                                    Respondent.       :
(Attorney Registration No. 1892660)
------------------------------------------------------------------------x

TO:   THE HONORABLE A. GAIL PRUDENTI, PRESIDING JUSTICE, AND ALL
      JUSTICES OF THE APPELLATE DIVISION OF THE SUPREME COURT OF
      THE STATE OF NEW YORK, SECOND JUDICIAL DEPARTMENT

      The Petition of the GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL

DISTRICT respectfully alleges that:

      FIRST:      The Respondent, RUTH M. POLLACK, was admitted to practice as

an attorney and counselor-at-law in the courts of the State of New York by the Appellate

Division, Second Judicial Department, on October 26, 1983, under the name RUTH

MARIE POLLACK.

      SECOND:     By Decision and Order on Motion of the Appellate Division, Second

Judicial Department, dated June 23, 2009, RUTH M. POLLACK was immediately

suspended from the practice of law in the State of New York, continuing until further

order of the Court, and the Grievance Committee for the Tenth Judicial District was

authorized to institute and prosecute a disciplinary proceeding against RUTH M. POLLACK, based on her conviction of a serious crime.

THIRD:     Upon information and belief, Respondent has been guilty of professional misconduct as defined by Section 691.2 of the Rules Governing the Conduct of Attorneys for the Appellate Division, Second Judicial Department [22 NYCRR 691.2], in that:

### CHARGE ONE

Respondent, RUTH M. POLLACK, has been guilty of professional misconduct within the meaning of Judiciary Law Section 90(2) and 22 NYCRR 691.2, in that Respondent was convicted of a "serious crime" within the meaning of Judiciary Law Section 90(4)(d) and Section 691.7 of the Rules of the Supreme Court, Appellate Division, Second Department (22 NYCRR 691.7), as follows:

1. By Memorandum and Verdict dated September 19, 2008, Respondent was convicted of Criminal Contempt in the United States District Court in the Eastern District of New York.

2. On September 26, 2008, Respondent was sentenced to unsupervised probation for a period of two (2) years. As a special condition of probation, Respondent was suspended from the practice of law in the United States District Court for the Eastern District of New York for a period of 45 days.

### CHARGE TWO

Respondent, RUTH M. POLLACK, has been guilty of engaging in conduct that adversely reflects on her fitness as a lawyer, as follows:

3.  The factual specifications of Charge One, paragraphs 1 through 2, are repeated and re-alleged as if more fully set forth herein.

FOURTH:    Respondent, RUTH M. POLLACK, knew or should have known that in committing the aforementioned acts, she was guilty of professional misconduct within the meaning of Judiciary Law Section 90; the Rules of the Appellate Division, Second Department, Part 691 (22 NYCRR Part 691); and the Disciplinary Rules of the Code of Professional Responsibility (22 NYCRR Part 1200).

WHEREFORE, Petitioner prays that an Order be entered directing that the Respondent, RUTH M. POLLACK, as a suspended attorney, be disciplined upon the charges as set forth above, and for such other action as may be contemplated by Section 90 of the Judiciary Law of the State of New York, or as the Court may deem just and proper.

Dated:       Hauppauge, New York
             June 30, 2009


Paul Gianelli
CHAIRMAN

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : SECOND JUDICIAL DEPARTMENT
------------------------------------------------------------------------x
In the Matter of RUTH M. POLLACK,                          :
a suspended attorney.
                                                           :

GRIEVANCE COMMITTEE FOR THE TENTH                          **VERIFICATION**
JUDICIAL DISTRICT,                                         :
                                                           #2009-00948
                                   Petitioner,             :

          - against -

RUTH M. POLLACK,                                           :

                                   Respondent.             :
(Attorney Registration No. 1892660)
------------------------------------------------------------------------x
STATE OF NEW YORK

COUNTY OF SUFFOLK

          PAUL GIANELLI, being duly sworn, deposes and says:

          I am the Chairman of the GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL

DISTRICT, the Petitioner in the within proceeding, and am acquainted with the facts and

circumstances of the above entitled action;

          I have read the foregoing Petition and know the contents thereof;

          That same is true to my own knowledge, except as to the matters therein stated to

be alleged on information and belief, and as to those matters, I believe them to be true.

Dated:     Hauppauge, New York
           June 30, 2009

                                                           *Paul Gianelli*
                                                           Paul Gianelli

Sworn to before me this
30th day of June, 2009

*Virginia Kinahan*
     Notary Public

VIRGINIA R. KINAHAN
Notary Public, State of New York
No. 01KI4793279
Qualified in Suffolk County
Commission Expires July 31, 2009

# Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

M88523
E/nl

A. GAIL PRUDENTI, P.J.
WILLIAM F. MASTRO
REINALDO E. RIVERA
ROBERT A. SPOLZINO
STEVEN W. FISHER, JJ.

2009-00948

DECISION & ORDER ON MOTION

In the Matter of Ruth M. Pollack, admitted
as Ruth Marie Pollack, an attorney and
counselor-at-law.

Grievance Committee for the Tenth Judicial
District, petitioner;
Ruth M. Pollack, respondent.

(Attorney Registration No. 1892660)

By letter dated January 27, 2009, the Grievance Committee for the Tenth Judicial District informed the court that the respondent was convicted on September 26, 2008, of criminal contempt pursuant to Federal Rules of Criminal Procedure rule 42 in the United States District Court, Eastern District of New York. She was sentenced by the Honorable Allyne R. Ross to unsupervised probation for a period of two years and suspended from the practice of law in the Eastern District of New York for a period of 45 days. The Grievance Committee submitted certified copies of the judgment dated September 26, 2008, the memorandum and verdict dated September 19, 2008, and the sentencing minutes dated September 26, 2008, and took the position that the respondent's conviction qualifies as a serious crime within the meaning of Judiciary Law § 90(4)(d) and 22 NYCRR 691.7(b). Notwithstanding that order of suspension, the respondent continued to practice law in the United States District Court, Eastern District of New York. Accordingly, by order dated December 31, 2008, the Committee on Grievances for the Eastern District of New York suspended the respondent from the practice of law before that court for a period of two years. The Grievance Committee for the Tenth Judicial District also submitted a certified copy of that order to the court and served the respondent with a notice pursuant to 22 NYCRR 691.3 informing her of her

June 23, 2009

Page 1.

MATTER OF POLLACK, RUTH M.

right to file a verified statement setting forth defenses to the imposition of reciprocal discipline. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on October 26, 1983, under the name Ruth Marie Pollack.

Upon the papers submitted to the court, it is

ORDERED that on the court's own motion, the respondent Ruth M. Pollack, admitted as Ruth Marie Pollack, is immediately suspended from the practice of law pursuant to Judiciary Law § 90(4)(f) as a result of her conviction of a serious crime, continuing until further order of this court; and it is further,

ORDERED that the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, shall promptly comply with this court's rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10); and it is further,

ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this court, the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, is commanded to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission or other public authority, (3)  giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,

ORDERED that on the court's own motion, the Grievance Committee for the Tenth Judicial District is hereby authorized to institute and prosecute a disciplinary proceeding in this court, as petitioner, against the said Ruth M. Pollack, admitted as Ruth Marie Pollack, based on her conviction of a serious crime; and it is further,

ORDERED that Rita E. Adler, Chief Counsel to the Grievance Committee for the Tenth Judicial District, 150 Motor Parkway, Suite 102, Hauppauge, N.Y. 11788, is hereby appointed as attorney for the petitioner in such proceeding; and it is further,

ORDERED that the petitioner Grievance Committee shall serve upon the respondent and the Special Referee and file with this court a petition within 30 days after receipt of a copy of this decision and order on motion; and it is further,

ORDERED that the respondent shall serve an answer to the petition upon the petitioner and the Special Referee and file the original answer with this court within 20 days after service upon her of the petition; and it is further,

ORDERED that the issues raised by the petition and any answer thereto are referred

June 23, 2009                                                                                          Page 2.

MATTER OF POLLACK, RUTH M.

to the Honorable James A. Gowan, a retired Justice of the Supreme Court, Suffolk County, 90 Sequams Lane East, West Islip, N.Y. 11795, as Special Referee to expeditiously hear and report, together with his findings on the issues, and to submit a report within 60 days after the conclusion of the hearing or the submission of post-hearing memoranda; and it is further,

ORDERED that if the respondent, Ruth M. Pollack, admitted as Ruth Marie Pollack, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 691.10(f); and it is further,

ORDERED that the Grievance Committee's application pursuant to 22 NYCRR 691.3 to impose reciprocal discipline upon the respondent is denied as academic.

PRUDENTI, P.J., MASTRO, RIVERA, SPOLZINO and FISHER, JJ., concur.

ENTER:

SUPREME COURT, STATE OF NEW YORK
APPELLATE DIVISION SECOND DEPT

I, JAMES EDWARD PELZER, Clerk of the Appellate Division of the Supreme Court. Second Judicial Department, do hereby certify that I have compared this copy with the original filed in my office on 6/23/09 and that this copy is a correct transcription of said original.

IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of this Court on 6/24/09

James Edward Pelzer
Clerk of the Court

June 23, 2009

MATTER OF POLLACK, RUTH M.

Page 3.

## NEW YORK SUPREME COURT

### Appellate Division - Second Department

**691.10 Conduct of disbarred, suspended or resigned attorneys**

(a) Compliance with Judiciary Law. Disbarred, suspended or resigned attorneys at law shall comply fully and completely with the letter and spirit of sections 478, 479, 484 and 486 of the Judiciary Law relating to practicing as attorneys at law without being admitted and registered, and soliciting of business on behalf of an attorney-at-law and the practice of law by an attorney who has been disbarred, suspended or convicted of a felony.

(b) Compensation: A disbarred, suspended or resigned attorney may not share in any fee for legal services performed by another attorney during the period of his removal from the bar. A disbarred, suspended or resigned attorney may be compensated on a quantum meruit basis for legal services rendered and disbursements incurred by him prior to the effective date of the disbarment or suspension or of his resignation. The amount and manner of payment of such compensation and recoverable disbursements shall be fixed by the court on the application of either the disbarred, suspended or resigned attorney or the new attorney on notice to the other as well as on notice to the client. Such applications shall be made at special term in the court wherein the action is pending or at special term in the Supreme Court in the county wherein the moving attorney maintains his office if an action has not been commenced. In no event shall the combined legal fees exceed the amount the client would have been required to pay had no substitution of attorneys been required.

(c) Notice to clients not involved in litigation. A disbarred, suspended or resigned attorney shall promptly notify by registered or certified mail, return receipt requested, all clients being represented in pending matters, other than litigated or administrative matters or proceedings pending in any court or agency, of his disbarment, suspension or resignation and his consequent inability to act as an attorney after the effective date of his disbarment, suspension or resignation and shall advise said clients to seek legal advice elsewhere.

(d) Notice to clients involved in litigation.

3748A.10

2) that he has served a copy of such affidavit upon the petitioner or moving party. Such affidavit shall also set forth the residence or other address of the disbarred, suspended or resigned attorney where communications may be directed to him.

(g) Appointment of attorney to protect clients' interests and interests of disbarred, suspended or resigned attorney. Whenever it shall be brought to the court's attention that a disbarred, suspended or resigned attorney shall have failed or may fail to comply with the provisions of subdivisions (c), (d), or (f) of this section, this court, upon such notice to such attorney as this court may direct, may appoint an attorney or attorneys to inventory the files of the disbarred, suspended or resigned attorney and to take such action as seems indicated to protect the interests of his clients and for the protection of the interests of the disbarred, suspended or resigned attorney.

(h) Disclosure of information. Any attorney so appointed by this court shall not be permitted to disclose any information contained in any file so inventoried without the consent of the client to whom such file relates except as necessary to carry out the order of this court which appointed the attorney to make such inventory.

(i) Fixation of compensation. This court may fix the compensation to be paid to any attorney appointed by it under this section. The compensation may be directed by this court to be paid as an incident to the costs of the proceeding in which the charges are incurred and shall be charged in accordance with law.

(j) Required records. A disbarred, suspended or resigned attorney shall keep and maintain records of the various steps taken by him under this Part so that, upon any subsequent proceeding instituted by or against him, proof of compliance with this Part and with the disbarment or suspension order or with the order accepting the resignation will be available.

(k) Abandonment of practice by attorney. When, in the opinion of this court, an attorney has abandoned his practice, this court, upon such notice to such attorney as it may direct, may appoint the chief counsel of the appropriate joint bar association grievance committee, or an individual attorney, to take custody and inventory the files of such attorney and to take such action as seems indicated to protect the interests of his clients.

The affidavit of compliance referred to herein should be filed with this court and a copy thereof served on the attorney for the petitioner within the time set forth.

*James A. Gowan, Esq.*
*90 Sequams Lane East*
*West Islip, New York 11795*
*(631) 669-2324*

August 3, 2009

**PERSONAL & CONFIDENTIAL**

Ruth M. Pollack, Esq.
21 West Second Street, Suite 13
P.O. Box 120
Riverhead, NY 11901


        and


State of New York
Grievance Committee for the
Tenth Judicial District
150 Motor Parkway, Suite 102
Hauppauge, NY 11788
Att: Michele Filosa, Esq., Asst. Counsel

RE: <u>Notice of Date, Time and Place of Hearing</u>
      In the Matter of Ruth M. Pollack, a suspended
      Attorney and Counsellor at Law
      Atty Reg. No. 1892660

      Grievance Committee for the Tenth Judicial
      District,
                        Petitioner

      Ruth M. Pollack,

                        Respondent.


Lawyers:

        As you know, pursuant to a Decision and Order on Motion of the Supreme Court of the State of New York Appellate Division: Second Judicial Department, dated June 23, 2009, the undersigned was appointed a Special Referee to expeditiously hear and report to such Court the issues raised by the petition and any answer thereto in the above matter.

3

*Gowan*
*August 3, 2009*
*Page 2*

Accordingly, please be advised that a hearing will be held before the undersigned:

DATE:     Wednesday, August 19, 2009

TIME:     1030 Hrs. E.D.T.

PLACE:     At a separately designated room: Office of the Grievance Committee for the Tenth Judicial District, 150 Motor Parkway, Suite 102, Hauppauge, New York 11788

The hearing will continue from day to day and until the undersigned has determined that the parties have had adequate time to present evidence relative to their position on the issues.

At the conclusion of the hearing, each party shall have the opportunity to submit a memorandum of law on the issues raised.

If a party shall so elect such memorandum and/or memoranda shall be delivered to the Referee at 90 Sequams Lane East, West Islip, NY 11795 in such a manner or method so as to be received by the Referee not later than 1700 Hrs. E.D.T., Tuesday, September 8, 2009.

Adjournment only for excellent cause shown, on affidavit, and further on the consent of the Referee, Petitioner and Respondent.

**No Facsimile Transmission.**

Very truly yours,

JAMES A. GOWAN, Special Referee
Justice of the Supreme Court of the State of
New York (Ret.)
90 Sequams Lane East
West Islip, New York 11795
(631) 669-2324

JAG:jip



LONG ISLAND NY 117

JAMES A. GOWAN, ESQ.
90 SEQUAMS LANE EAST
WEST ISLIP, NY 11795

PERSONAL & CONFIDENTIAL

Ruth M. Pollack, Esq.
21 West Second Street, Suite 13
P.O. Box 120
Riverhead, NY 11901

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISON SECOND DEPARTMENT

RECEIVED
09 JUL 27 PM 3: 21
APPELLATE DIVISION
SECOND DEPARTMENT

-----------------------------------------------------------------x
In the Matter of Ruth M. Pollack, Esq. Sui Juris,

Grievance Committee for the
Tenth Judicial District,

                              Petitioner,

-against-

Ruth M. Pollack, Esq.

                        Respondent Sui Juris.

VERIFIED
ANSWER TO
"VERIFIED PETITION"
#2009-00948
**Trial By Jury Demanded**

(Attorney Registration No. 1892660)
-----------------------------------------------------------------x
State of New York )
County of Suffolk  ) ss.:

Ruth M. Pollack, Esq. Sui Juris, submits this Answer to the "Verified Petition" dated June 30,

2009 as follows:

1. Admits the allegations set forth in Paragraph "FIRST", except denies that Ruth M.

   Pollack was admitted to practice "under the name RUTH MARIE POLLACK", as

   set forth in the Petition and respectfully refers all questions of law to the Court.

2. Denies the allegations set forth in Paragraph "SECOND" of the petitioner, and

   respectfully refers all questions of law to the Court.

3. Denies the allegations set forth in Paragraph "THIRD" and respectfully refers all

   questions of law to the Court.

4. Denies the allegations set forth in the Paragraphs labeled "CHARGE ONE"

   in all respects and respectfully refers all questions of law to the Court.

5. Denies the allegations set forth in the Paragraphs labeled "CHARGE TWO" and

   respectfully refers all questions of law to the Court.





6. Denies the allegations set forth in the Paragraph "FOURTH" and respectfully refers all questions of law to the Court.

## AFFIRMATIVE DEFENSES

7. Petitioner is guilty of and its conduct is null and void under the Doctrine of Unclean Hands.

8. Upon information and belief, Petitioner is involved in a criminal enterprise and complicit with certain members of the Second Department, the Eastern District of New York (EDNY) and the "EDNY Ethics Committee".

9. Petition fails as petitioners have failed to obtain Personal Jurisdiction and proper service of process upon Respondent in all respects, including the EDNY's own complete failure to meet due process service requirements upon respondent.

10. Petitioner, its agents, servants and employees are guilty of the Federal Tort of Negligent Infliction of Emotional Distress, a crime.

11. Petitioner is guilty of the crime of Destruction of Evidence, Obstruction of Justice and Failure to Disclose Evidence or proof of allegations to Attorney Pollack at any time to deny her Due Process, even after requested by her to comply with her discovery requests.

12. As a direct result of the misconduct of this petition's proposed action, Attorney Pollack and the Chesney's are in fear for their lives and safety.   Ms. Pollack was brutally assaulted and beaten in New York County Family Court at the Court's direction by eight New York State court officers on June 6, 2007; the day after

Judge Bianco dismissed the trial of <u>Stuart v. Department of the Interior, et al.</u> (99-cv- 8163).

13. Attorney Pollack as an officer of the Court cannot, on good conscience, participate in this illegal and unconstitutional proceeding.   She cannot serve Mr. Gowan with defamatory papers and must let on Ms. Adler continue her defamatory acts by Ms. Adler's mailing the enclosed second copy to Mr. Gowan.

14. The U.S. Supreme Court and this Circuit have never seen a case such as this. Extensive investigation and research of cases nationwide to date have failed to uncover a case of the magnitude of this case in terms of the underlying criminal misconduct of the court and defendants on a state and federal level.

15. The "Verified Petition" is illegal as Rita e. Adler, Esq. is acting as both Petitioner and the "Attorney for Petitioner Grievance committee for the Tenth Judicial District".   As such, Ms. Adler and her Committee are acting in a conflict of interest that violates the Code of Conduct of Attorneys.

16. This matter must be stayed and stopped and must be subject to an immediate criminal probe of Petitioner's actions in all respects.

17. The Committee is placing itself in a position of being taken to court in multiple actions to protect the guaranteed rights of Attorney Pollack and her clients, including but not limited to Kevin G. and Lorraine Chesney.

18. Petitioner Committee is acting in a criminal enterprise that includes this petition and all of its predicate purported "orders" cited.

19. Upon information and belief, Chairman Paul Gianelli, an attorney himself, has submitted a perjurious and defamatory verification dated June 30, 2009 as to the

alleged "truth" of the Petition filed against Attorney Pollack.  Mr. Gianelli has also failed to submit as required by law any documentary evidence as to the allegations, any underlying order, any proof of any wrongdoing of any kind by Ms. Pollack, an attorney in good standing for over twenty-six (26) years. He has also failed to submit a statement as required under 22 NYCRR 130.1-1 and has committed official misconduct, illegal acts, incomplete papers, perjurious and defamatory statements against which have continued to obstruct justice, damaged the Chesneys and Attorney Pollack.

20.  Despite the uncontroversial proof of misconduct and perjury of Michelle Feldman, Esq. of Lamb Barnosky LLP and Steven Stern, Esq. of Stern and Sokoloff, LLP as reported to the EDNY Court by both Attorney Pollack and Mr. Chesney, the EDNY Court and this Committee wholly failed to act to investigate this misconduct as is required by law.

21.  As a direct result of the landmark misconduct of the above firms and the EDNY Court's own uncontroverted record tampering and expoliation of dockets, files, and payroll records in the Chesney case since 2005, this petition is unsupported by law but is retaliation against a plaintiff and its attorney, Attorney Pollack as whistle blowers.

22.  This Petition is unprecedented malicious prosecution against Attorney Pollack and client Chesney for publicly and officially whistle-blowing against such official and private misconduct.

23.  Petitioners have defamed Attorney Pollack and the Chesneys by all of the correspondence prepared by the Committee, its agents, servants and employees by

publishing this and its related orders and documents on the Internet and in The New York Law Journal, among other publications, knowing it is false and defamatory.

24. The Petition constitutes local, state and federal discrimination against a disabled attorney and her disabled client in contravention of state and federal law.

25. This Petition that has incorporated two illegal suspensions of Attorney Pollack by the EDNY is subjecting attorney Pollack to Double Jeopardy.   EDNY has never served Attorney Pollack with process as required by the EDNY rules.  Petitioner, the Second Department, (Mr. Peltzer) and EDNY have intentionally manipulated and miss-used the United States mail and Federal Express to attempt to "serve" Attorney Pollack at her home and avoided her official office so that she would not receive her mail.

26. Attorney Pollack never signed for EDNY Judge Cogan's correspondence or later "Order" backdated to December 31, 2008 because she was not served with them as mandated by Federal Rule.

27. Attorney Pollack has never acted in a criminal manner nor has any proof of such action ever been adduced against her.  No proof of the alleged practice of law during the initial illegal 45-day suspension has ever been produced despite repeated demands for this proof by Attorney Pollack.

28. The underlying prosecution on which this Petition is based is under appeal and cannot be used as the basis for this malicious prosecution.

29. The petition is defective as it is identical to the EDNY suspension papers, which were also invalid as not served upon Attorney Pollack under the Federal Rules of Civil Procedure and its own "rules".

30. Petitioner does not have a special set of rules, privileges or rights giving it the rights to prosecute an innocent attorney by this Petition.

31. The Petition constitutes Prima Facie defamation against Attorney Pollack by all involved.

32. Ms. Adler cannot legally rig a mock trial in front of a civilian who she hand-picked as a Judicial Hearing Officer.

33. The Committee has by its own petition, violated the law and the Constitution of the State of New York and the United States.

34. If Pollack attends the mock trial, she is forced to incriminate herself in contravention of her 5th Amendment rights.

35. In Adler's April 21, 2009 letter to one of Attorney Pollack's client Kevin Chesney in response to Mr. Chesney's criminal complaint to the 10th Judicial District Grievance Committee re:  complaint File N-605-09 & S-606-09, Deputy Chief Counsel Mitchell T. Borkowsky wrote,

> **Your allegations are intertwined with a pending court action. This Committee does not intervene in matters pending before a court, nor does it have the same powers as a court to provide the legal redress required in the circumstances described.  You must first resolve the matter in the court in which the matter is pending.**
>
> **Accordingly, our Committee is unable to be of assistance to you in these matters at this time. Should evidence of unethical conduct be proven duriing the course of further proceedings, either the Court of you can bring such evidence to our Committee's attention at the conclusion of all legal proceedings.**

6

**Letter of Rita E. Adler, Esq. Chief Counsel, by Mitchell T. Borkowsky,**

**Deputy Chief Counsel to Kevin G. Chesney dated April 21, 2009.**

36. In an unconstitutional effort to deprive Mr. Chesney of his chosen attorney, this Committee and the EDNY have deprived him of his right to have competent legal representation, to proceed with his appeal by fraud and tampering, and have victimized both Attorney Pollack and Mr. Chesney who are not at fault.

37. Since the Chesney case file (EDNY # 05cv5106[ETB][DRH]) has been **destroyed** in the EDNY Courthouse, his and Attorney Pollack's ability to appeal has also been destroyed.  Now, this prosecuting Committee is bound by its own rules to investigate Mr. Chesney's complaints of official misconduct. Nothing is pending in the Chesney case, so the 10th Judicial District must investigate his and his attorney's complaints to the Committee submitted by Mr. Chesney to it. Under the FOIA, Mr. Chesney is entitled to full disclosure of the entire procedure of the investigation. This Committee must hand this case off to an independent special federal prosecutor for a criminal probe because it has now demonstrated that it is not impartial and is willing to cover up the crimes of firms that it favors. In addition, it discriminates.  It is no coincidence that it is protecting two defense firms for school districts that are "financially strapped" as a result of the overcharging of taxpayers by the millions of dollars and its Board of Education was  "incomplete, ill equipped and ripe for fraud" as it fired Mr. Chesney as it protected a convicted teacher and two-time drug offender.  Source: 2002-2007

Audit Report for the Valley Stream Schools, 2008, Thomas DiNapoli, and N.Y.S. Comptroller.

38. Upon information and belief, despite the ruination of the School District under the watch of these and other firms, the firms were protected by this Committee and the EDNY for clear RICO acts and copious criminal activity.

39. The Chesney case was unlawfully closed by Judgment of EDNY Chief Clerk Heinemann filed **before** the case was fully litigated and a motion schedule was in place. The destruction of his case file has destroyed any further action on the case. This matter is so serious and egregious and must be provided to independent federal and state authorities for a full criminal probe as to who ordered the destruction of the Chesney file, who committed the act itself, when, why and how, not to mention the tampering with its official docket for years.

40. No due process has been followed by this Petition, to wit: this Petition is violative of the 14th Amendment and the 1st Amendment. Attorney Pollack, if this was truly a criminal proceeding, was never arrested, never read her Miranda rights, never finger-printed, or ever provided with an attorney of her own choosing in any proceeding against her in the Eastern District of New York or in this Committee.

41. The Petition contains no procedural safeguards.

42. The Petition fails to provide anything that constitutes a charge.

43. The Petition is defective as it fails to appoint a judge or to provide a location in a court of law or any location or time or date of the purported "disciplinary proceeding".

8

44. No civilian may deprive an attorney of his/her license to practice law.

45. No one may illegally censer an attorney who is a citizen of the United States.

46. This attempt to damage Attorney Pollack is being done as a purely act to silence attorney Pollack as a protected whistle blower and at silence her and her client Kevin Chesney who have uncovered and reported the official criminal misconduct of attorneys in the <u>Chesney v. Valley Stream U.F.S.D.</u> case who, along with members of the Court at EDNY are still engaging in a pattern and practice of official docket tampering, electronic evidence tampering, destruction and expoliation of the official case file of the parties and in other cases.

47. The official case file of Chesney was required to be preserved by the EDNY as well as the Second Circuit, and was not.

48. The <u>Chesney</u> case and the Pollack contempt cases are also under appeal at the Second Circuit and thus cannot form the predicate for this Petition by law.

49. This Petition violates the Anti-SLAPP laws.

50. The EDNY Court, after sixteen (16) months, reported to Attorney Pollack and the Chesneys that the official case file papers they submitted were "absent"; then that the file as a whole was not available", "can't find it" and then "destroyed" as of several weeks ago. Indeed, Michelle Feldman, Esq. had to apologize to the EDNY for failing to submit plaintiff's papers.   This means that property of the Chesneys and Attorney Pollack have been tampered and destroyed.

51. This Committee has issued an illegal "DECISION & ORDER ON MOTION" that contains no judge's signature as required by law.

52. No witnesses have ever been produced by the EDNY or this Committee in any proceeding against Attorney Pollack.

53. No proper procedure has ever been followed.

54. This action against Attorney Pollack is retaliation for her acting for many years as an attorney in good standing that represents disabled clients, whistle blowers and that she has acted herself to date as a whistle blower.

55. It is impossible for a criminal, Ms. Adler, one who protects criminal lawyers, to act as the prosecutor of Attorney Pollack in a void and unconstitutional "proceeding".

56. Attorney Pollack has been worked on cases which involve official misconduct by public school officials and private companies such as Patchogue Medford Union Free School District, Roslyn Union Free School District, attorneys, Valley Stream Union Free School District, the Department of the Interior, The U.S. Post Office, Keyspan and National Grid, Chicago Tribune, Wright Risk Management, New York Schools Insurance Reciprocal, Hampton Bays Union Free School District, South County Central School District, Euro Brokers and First Unum/Provident, Rockland County Court and Westchester County, the latter two of which involve docket tampering and mortgage and deed fraud, and many others. This Petition and its suspension order are intended to punish Attorney Pollack for her professional work, and are retaliatory and a cover-up of official corrupt practices.

57. Unconstitutional Immediate suspension of Attorney Pollack without Prior Warning by Petitioner was to and did imperil her duty to her clients and to destroy

Federal Rules of Civil Procedure and its own "rule". Defendant does not have a special set of rules, privileges or rights giving it the rights to prosecute an innocent attorney by this petition.

## A MOCK TRIAL WITH A SPECIAL REFEREE IS UNCONSTITUTIONAL

67.  Ms. Adler cannot legally rig a mock trial in front of a civilian that she hand-picked and will pay because the Committee has by its own petition, violated the law and Constitution of the State of New York and the United States.  This planned "proceeding" is not a basketball game or a football game in which a "referee" can make a "call" in a game.   It is a serious attempt to blackball me and deprive me of my right to earn a living and be free of retaliation as a whistle blower, against official corruption.  If I attend this mock trial, I will be forced to incriminate myself without an opportunity to confront my accusers.

68.  Adler has no legal right to prosecute me in this manner.  In Adler's April 21, 2009 letter to one of my clients Kevin Chesney, in response to Mr. Chesney's complaint to the 10th Judicial District Grievance Committee re:  complaint File N-605-09 & S-606-09, Deputy Chief Counsel Mitchell T. Borkowsky wrote in part:

> **Your allegations are intertwined with a pending court action. This Committee does not intervene in matters pending before a court, nor does it have the same powers as a court to provide the legal redress required in the circumstances described. You must first resolve the matter in the court in which the matter is pending.**
>
> **Accordingly, our Committee is unable to be of assistance to you in these matters at this time. Should evidence of unethical conduct be proven during the course of further proceedings, either the Court or you can bring such evidence to our Committee's attention at the conclusion of all legal proceedings?**

26